G. M. HITCHCOCK, ADMINISTRATOR, PLAINTIFF IN ERROR, v. FRED S. HASSLER, DEFENDANT IN ERROR.

1. **Promissory Note:** CONSIDERATION: PAYMENT. Suit by the administrator of P. W. H. against F. S. H. on a note for $550, dated October 4, 1876. Answer, payment. Testimony tending to prove that the note represented a sum of money placed by P. W. H. in the hands of F. S. H. to be by him used to purchase a controlling interest in a certain newspaper establishment, to the end that said newspaper would support the candidacy of P. W. H. for re-election to the U. S. Senate; that the purchase of the newspaper failed; that thereupon P. W. H. directed that the money be disbursed in legitimate campaign expenses in his interest in P. county. There was also evidence tending to prove the disbursement of considerable sums of money for livery teams to carry persons to political meetings, writing up proceedings of political meetings, and other expenses, prior to the election of 1876. A verdict for the defendant, upheld.

2. ———: ———: ACCORD AND SATISFACTION. Testimony as above being before the jury, an instruction prayed by plaintiff in the following words: "If the jury believe there is no testimony showing a final settlement between Hitchcock and Hassler, and that at the date of Hitchcock's death no balance had been struck between them, then there is no accord and satisfaction, and the plaintiff must recover." *Held,* Rightly refused.

ERROR to the district court for Pawnee county. Tried below before DAVIDSON, J.

*H. D. Estabrook* (*J. L. Edwards* with him), for plaintiff in error, cited: *Johnson v. Hunt*, 22 Am. Law Reg., N. S., 777. *White v. Gray*, 68 Me., 579. *Cushing v. Wyman*, 44 Id., 121. *Kromer v. Heim*, 75 N. Y., 574. *Clifton v. Litchfield*, 106 Mass., 34. *Simmons v. Hamilton*, 56 Cal., 493. *Blackburn v. Ormsby*, 41 Penn. State, 97. *Pettis v. Ray*, 12 R. I., 344.

*G. M. Humphrey*, for defendant in error, cited: *Brady v. Durbrow*, 2 E. D. Smith, 78. 7 Wait's Actions and Defenses, 381. *Treadwell v. Himmelmann*, 50 Cal., 11. *Whitney v. Cook*, 53 Miss., 551. *Griffiths v. Owen*, 13 M. & W., 63. *Good v. Cheesman*, 2 B. & Ad., 328.

COBB, CH. J.

This action was brought by the son and administrator of the late P. W. Hitchcock on a note found among the personal effects of the deceased against Fred S. Hassler. The defendant interposed a plea of payment. A trial was had to a jury, and verdict and judgment for the defendant, and the plaintiff brings the cause to this court on error. Plaintiff in error makes five substantial points, besides several formal ones:

"1. Said court erred in overruling the motion of plaintiff in error for a new trial.

"2. Said court erred in its charge to the jury on the trial of said cause.

"3. Said court erred in refusing to give the charges asked for by plaintiff in error.

"4. The facts set forth in the answer are not sufficient defense in law to the said action of said plaintiff in error.

"5. Said court erred in the admission of evidence offered by said defendant in error, to which said plaintiff in error objected."

The instructions prayed by the plaintiff, but refused by

the court, as stated in the third assignment of error, were as follows:

"4. The burden of proof of showing payment is upon the defendant, and he must make it out by the preponderance of testimony and to the satisfaction of the jury.

"3. If the jury believe there is no testimony showing a final settlement between Hitchcock and Hassler, and that at the date of Hitchcock's death no balance had been struck between them, then there is no accord and satisfaction, and the plaintiff must recover."

The court had already on its own motion given the substance of the first of the above instructions (No. 4), and having once given it it was not error to refuse to give it again, although had it not have already been given in substance, its refusal would have been error.

The second of the above instructions (No. 3) fairly presents the point upon which this case turns. It appears from the bill of exceptions that in the summer and fall of 1876 Senator Hitchcock, whose term of office would expire on the fourth of March following, was a candidate for re-election and took a deep interest in the canvass then pending throughout the state for the election of the members to compose the two houses of the legislature. So much, indeed, belongs to the public political history of the state. And there was evidence tending to prove that, recognizing the county of Pawnee as the center of an important political section of the state, the senator desired to secure to his personal and party friends the control of one of the established newspapers of that county. For this purpose he placed a sum of money in the hands of the defendant, a business man of that county and a well known political and personal friend of the senator, and as a memorandum took his promissory note for the said money, payable on or before the first day of April next thereafter with interest. That upon the decease of Senator Hitchcock in the month of July, 1881, the said note was found

among his effects, with no accompanying evidence of any
fact or circumstance to take it out of the class of ordinary
business transactions or to show that it had been paid. It
is, however, abundantly proved by witnesses testifying to
conversations had with the late senator during his lifetime
that the purpose for which the said money was put into
the hands of the defendant failed, and there is testimony
tending to prove, and which to the mind of the jury doubt-
less did sufficiently prove, that upon the failure of such
purpose the said money was by direction of Senator Hitch-
cock disbursed by the defendant in such matters as under
the general head of campaign expenses are well known to
make heavy demands upon the resources of men in high
political position in this country at each oft-recurring time
of election. Now viewing the above instruction prayed
for by the plaintiff but refused by the court in the light
of the evidence in the case, the proposition amounts to
this, that although the jury may believe from the evidence
that the full amount of money represented by the note in
question was by direction of Senator Hitchcock paid out
and disbursed by the defendant in paying the expenses of
political meetings, public political speakers, newspapers,
and the like, supposed to be necessary to the senator's
political success, yet unless it is proved that after these
expenditures were made Senator Hitchcock ratified and
approved them, and struck a balance with the defendant,
they must by their verdict hold him to repay every dollar
with interest. It must be admitted that this would be a
hard rule, and that it would not be applied unless de-
manded by settled principles of law, and if there are to
be found adjudicated cases wherein courts of last resort
have adjudged the law to be different, and more in accord
with the principles of natural justice, they will doubtless
be followed, and such cases are to be found.

That of *Good v. Cheesman*, 2 Barn. and Ad., 328, came
before the court of King's bench in 1831, upon the follow-

ing facts: A debtor being unable to meet the demands of his creditors, they signed an agreement (which was assented to by the debtor) to accept payment by his covenanting to pay two-thirds of his annual income to a trustee of their nomination, and give a warrant of attorney as a collateral security. The creditors never nominated a trustee, and the agreement was not acted upon, and one of the creditors brought an action against the debtor for his demand. The debtor appeared to have been always willing to perform his part of the engagement. There was a verdict for the defendant, and on proceedings equivalent to our proceeding in error, before the full bench, Lord Tenterden, C. J., said: "Upon the whole I am of opinion that the verdict in this case was right. On the evidence it must be taken that the defendant assented to the composition, and would have been willing to assign a third of his income to a trustee nominated by the creditors, and execute a warrant of attorney, as required by the agreement, but could not do so unless the creditors would appoint a trustee to whom such assignment could be made or warrant of attorney executed. * * * It certainly appears that this was not an accord and satisfaction properly and strictly, so-called, but it was a consent by the parties signing the agreement to forbear enforcing their demands in consideration of their own mutual engagement of forbearance; the defendant at the same time promising to make over a part of his income, and to execute a warrant of attorney, which would have given the trustee an immediate right for their benefit." * * * All the other judges, Littledale, Parke, and Patteson, concurring and expressing views similar to those of the chief justice, the judgment was affirmed.

The case of *Griffith v. Owen*, 13 M. & W., 58, came before the court of exchequer in 1844. It was an action of assumpsit for a breach of contract for not delivering to the plaintiff certain promissory notes, etc. Plea that after

the breach of said promise, etc., the defendant delivered to the plaintiff at his request, and for and on account of said notes, and the promise and damages in respect thereof, a certain order in writing, signed by the defendant, and directed to one Brown, in whose hands the said notes then were, whereby the defendant requested the said Brown to deliver to the said plaintiff the said notes, and the plaintiff then took and received the said order for and on account of the said notes, and the said promise and damages; that the said Brown was always from the time of the delivery to the plaintiff of the said order    *    *    *    until the loss of the said notes hereinafter mentioned, ready and willing to deliver up the said notes to the plaintiff *    *    *    the said notes were afterwards feloniously stolen, etc.    Chief Baron Pollock, in delivering the opinion of the court, said: "I am of the opinion that this plea is bad.    The cases of *Chamberlyn v. Delarive* and *Kearslake v. Morgan* undoubtedly establish this, that in case of a money demand, if the creditor accepts a promissory note, on an order for the payment of money on account of the debt, that is a sort of qualified or conditional payment, and may be so pleaded.    The present plea is in effect an attempt to extend to other causes of action the rule which applies merely to money demands."

In the case of *Babcock v. Hawkins*, 23 Vt. R., 561, the supreme court of Vermont, per Judge Redfield, say: "There is perhaps no subject connected with the law upon which there has been more discussion than that of accord and satisfaction, or upon which there is more want of agreement.    But we think it must be regarded as fully settled, that an agreement upon sufficient consideration fully executed, so as to have operated in the minds of the parties as a full satisfaction and settlement, whether the new contract be ever paid or not, and that the party is bound to sue upon the new contract, if such were the agreement of the parties. This is certainly the common understanding of the matter.

It is reasonable, and we think it is in accordance with the strictest principles of technical law."

Applying the doctrine of the above cases to the case at bar, and I think it fairly deducible that if the said sum of money was advanced by Senator Hitchcock for the purpose of buying the whole or part of a certain newspaper establishment, that negotiations for such purchase failed, and thereupon the senator directed that the money be used for legitimate campaign purposes by the defendant for his, the senator's, benefit, that neither Senator Hitchcock or his personal representatives could maintain a suit on the said note thereafter. And I think that there was evidence before the jury not only tending to prove such facts, but which sustains their finding to that effect. I quote from the deposition of A. J. Wright, taken and read on the part of the defendant: "I think in the spring of 1877  *  *  *  Senator Hitchcock came in, and after the usual greetings, he asked me if I had seen Fred Hassler lately. I told him I had not. The senator said that he would like to have me tell Mr. Hassler, if I saw him, that he would like to have him come up and see him. He then went on to state that he had let Mr. Hassler have, I think, five hundred and fifty dollars in money to aid him in buying an interest in the Pawnee *Republican,* but that the project had failed, and he had told Fred to go on and use that money in his, Hitchcock's, interest, and that since the legislature had adjourned he had not seen Fred, and that he would like to have Hassler come up and settle the matter up." But the strongest testimony, and that which, taken in connection with the above, makes a strong case for the defendant, is that furnished by the letter of the 12 Sept., 1879, from the defendant to Senator Hitchcock, put in evidence by the plaintiff.

"PAWNEE CITY, NEB., Sept. 12, 1879.

"DEAR SIR—Yours of recent date is to hand, and contents carefully noted. Judging from the tone of yours I

scarcely know how to reply. You certainly well know that when the purchase of the *Republican* fell through I told you the money was in the bank, and suggested that with it I might be able to do something in Pawnee. In this you acquiesced, saying you would leave the matter entirely in my hands and to do with the funds as I thought best. This I did, and expended nearly $700, an itemized statement of which I have, besides my time and labor, and what success was achieved here was due solely to my work. I believe as you say that you are not a 'skin-flint,' neither have I ever entertained such an opinion, else I would not have entered into the work as I did. But I must, at the same time insist that in what I am deficient, for the benefit of others, must not come directly from me, for I am not in condition financially to stand it. If you doubt as to what I did and expended here in your interest refer to L. A. Stebbins and F. F. Liming, both of whose P. O. addresses are at this place.

"Now as to the 'good, fair, frank deal,' what do you think? For your interest I expended $150 of my own funds, aside from time and labor, and leave it to your candid judgment to estimate balances. Instead of this deficiency I could have made considerable by uniting with your enemies here, but preferred not to take issue with those I presumed my friends at the time.

"On several different times I called to see you privately in Omaha concerning this matter, believing there would be a satisfactory solution of the whole transaction, but at no time found you at home. So I hope you will not believe that I have endeavored to avoid meeting the matter fairly and squarely.

"Truly,
"FRED S. HASSLER."

Senator Hitchcock received this letter from the defendant nearly two years before his death, and left it among his papers. It was introduced in this case as evidence that

this transaction between him and the defendant was not settled up at the time of its date. It is evidence of that, and more. It is evidence, not of the highest grade, I grant, but of some weight of the facts therein stated, of the purpose for which the note was given, the failure of such purpose, and the subsequent understanding as to the disposition of the money. Also of the fact that for nearly two years, if not much more, of the late senator's life, he knew that the defendant not only claimed not to owe him anything on the said note, but claimed from him a hundred and fifty dollars for money expended in addition to the amount of the said note. And in a case like this, where death has sealed the lips of one party to an old transaction, and the law seals those of the other party, both court and jury must allow the mute and honest voice of inanimate things to speak that which their knowledge of human nature and experience in human affairs teaches them to be just and true.

It is deemed unnecessary to discuss the other propositions made by counsel in the brief, as in addition to the considerations expressed above, a thorough consideration of the whole case leads us to the conclusion that justice has been done in the case, and that the judgment of the district court must be affirmed, and it is so ordered.

JUDGMENT AFFIRMED.

THE other judges concur.